**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-5036

SAMARK JOSE LOPEZ BELLO,

*Plaintiff-Appellant,*

*v.*

ANDREA M. GACKI, in her official capacity as Director of the Office of Foreign Assets Control; UNITED STATES DEPARTMENT OF THE TREASURY OFFICE OF FOREIGN ASSETS CONTROL,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Columbia in No. 1:21-cv-01727-RBW, Honorable Reggie B. Walton, U.S. Senior District Judge*

## BRIEF FOR PLAINTIFF-APPELLANT

ERICH C. FERRARI
FERRARI & ASSOCIATES
1455 Pennsylvania Avenue, N.W.
Suite 400
Washington, DC 20004
Tel.: (202) 280-6370
Fax: (877) 448-4885
ferrari@falawpc.com

*Counsel for Plaintiff-Appellant*

June 12, 2023



# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Appellant makes the following certification:

**(A)    Parties, Intervenors, and *amici*:** The parties appearing before this Court are Samark Jose Lopez Bello; Bradley T. Smith, in his official capacity as Acting Director of the Office of Foreign Assets Control; and the United States Department of the Treasury, Office of Foreign Assets Control.

**(B)    Ruling under review.** The rulings at issue in this appeal are the December 21, 2022 Memorandum Opinion and accompanying Order issued by the Honorable Reggie B. Walton of the United States District Court for the District of Columbia granting in part and denying in part Appellees' Motion to Dismiss or, In the Alternative, Motion for Summary Judgment and denying as moot Appellant's Cross-Motion for Summary Judgment. The Memorandum Opinion and accompanying Order, docket numbers 19 and 20 in Civ. No. 21-1727, are included in the joint appendix.

**(C)    Related cases.** This case has not previously been before this Court or any other court for appellate review. Appellant is unaware of

any related case involving substantially the same parties and the same or similar issues.

## STATEMENT REGARDING DEFERRED APPENDIX

Pursuant to Circuit Rule 30(c), the parties have conferred and do not intend to use a deferred joint appendix.

# TABLE OF CONTENTS

Certificate as to Parties, Rulings and Related Cases ................................i

Statement Regarding Deferred Appendix .................................................iii

Table of Authorities ................................................................................vii

Glossary ...................................................................................................xii

Introduction ............................................................................................... 1

Statement of Jurisdiction.......................................................................... 5

Statement of Issues ................................................................................... 5

Statute and Regulations Involved ............................................................ 6

Statement of the Case ............................................................................... 6

    A. Background............................................................................................ 6

        1. Appellant ................................................................................... 6

        2. Foreign Narcotics Kingpin Designation Act....................... 7

        3. The February 13, 2017 Designation ..................................... 9

        4. The Administrative Record ...................................................11

        5. The Unclassified Summaries ................................................13

        6. Execution Against Appellant's Properties................................14

        7. The Amended Complaint.......................................................14

    B. Ruling Presented for Review .........................................................15

    C. Summary of Argument.....................................................................20

    D. Standard of Review ..........................................................................25

Argument ..................................................................................................26

    I.      OFAC Acted in Excess of Its Statutory Authority Under the
          Kingpin Act When It Concurrently Designated Appellant
          with Tareck Zaidan El-Aissami Maddah....................................26

A. The APA Renders Unlawful Agency Action in Excess of Statutory Authority...................................................26

B. OFAC Acted Beyond Its Statutory Authority Under the Kingpin Act By Concurrently Designating Appellant With El Aissami ...............................................28

C. The District Court Erred in Interpreting the Kingpin Act's Statutory Text....................................................33

II. OFAC Failed to Provide Fair Notice of Conduct Made Sanctionable Under the Kingpin Act in Violation of the Due Process Clause of the Fifth Amendment to the Constitution ...............................................................37

A. Appellant Has a Fifth Amendment Due Process Right to Fair Notice of Conduct Prohibited or Required by Law...............................................................37

B. OFAC Failed to Provide Fair Notice to Appellant That His Purported Conduct was Sanctionable Under the Kingpin Act.................................................39

C. The District Court Erroneously Equated Appellant's Fair Notice Claim to a Request for Pre-Deprivation Notice and Applied the Wrong Standard .........................43

III. OFAC Failed to Accord Appellant Constitutionally Adequate Notice Regarding the Bases of His Designation in Violation of the Administrative Procedure Act....................51

A. Due Process Requires Parties Have Notice Sufficient to Allow Them a Meaningful Opportunity to be Heard...............................................................51

B.   OFAC Did Not Provide Constitutionally Sufficient Notice of the Reasons for Appellant's Designation .......... 54

C.   The District Court Failed to Appreciate the Scope of OFAC's Notice Obligations as a Matter of Constitutional Due Process ............................................... 61

Conclusion ................................................................................. 65

# TABLE OF AUTHORITIES*

Page

**CASES**

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury,*
    686 F.3d 965 (9th Cir. 2012) .......................................... 4, 53, 60, 63

*Am. Bankers Assn. v. Nat'l Credit Union Admin.,*
    934 F.3d 649 (D.C. Cir. 2019) ......................................... 26

*Am. Lung Ass'n v. Env. Prot. Agency,*
    985 F.3d 914 (D.C. Cir. 2021) ......................................... 48

*Ass'n of Private Sector Coll. & Univs. v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ......................................... 27

*BMW of North America, Inc. v. Gore,*
    517 U.S. 559 (1996) ......................................... 37

*Chevron U.S.A. Inc. v. Natural Resources Defense Council,*
    467 U.S. 837, 842 (1984) ................................... 27, 33, 37

*Children's Hops. Ass'n v. Azar,*
    933 F.3d 764 (D.C. Cir. 2019) ......................................... 27

*Christopher v. SmithKline Beecham Corp.,*
    132 S.Ct. 2156 (2012) ......................................... 1

*Copar Pumice Co., Inc. v. Tidwell,*

    603 F.3d 780 (10th Cir. 2010) ......................................................... 27

*Deripaska v. Yellen,*

    No. 21-cv-5157 (D.C. Cir. March 29, 2022) ................................... 55

*District Hosp. Partners, L.P. v. Burwell,*

    786 F.3d 46 (D.C. Cir. 2015) .......................................................... 25

*Fabi Construction Co. v. Sec'y of Labor,*

    508 F.3d 1077 (D.C. Cir. 2007) ...................................................... 39

*Fares v. Smith,*

    901 F.3d 315 (D.C. Cir. 2018) ... 24, 51, 52, 53, 57, 59, 60, 62, 63, 64

*Fares v. Smith,*

    249 F. Supp. 3d 115 (D.D.C. 2017) .......................................... 49, 51

*FCC v. Fox Television Stations, Inc.,*

    567 U.S. 239 (2012) .............................................. 37, 38, 39, 42, 46

*Fulmen Co. v. Office of Foreign Assets Control,*

    547 F. Supp. 3d 13 (D.D.C. 2020) .................................................. 48

*Gates & Fox Co. v. Occupational Safety and*

    *Health Review Comm'n,*

    790 F.2d 154 (C.A.D.C. 1986) ......................................................... 2

*General Elec. Co. v. EPA,*

    53 F.3d 1324 (D.C. Cir. 1995) ................................................. 39; 50

*Grayned v. City of Rockford,*

    408 U.S. 104 (1972) ............................................................... 38

*Holy Land. Found. for Relief & Dev. v. Ashcroft,*

    219 F. Supp. 2d 57 (D.D.C. 2002) ............................................. 4, 44

*Kadi v. Geithner,*

    42 F. Supp. 3d 1 (D.D.C. 2012) ..................................... 25-26, 44, 49

*Karem v. Trump,*

    960 F.3d 656 (D.C. Cir. 2020) .......................................... 22-23, 37, 42

*Kiaraldeen v. Ashcroft,*

    273 F.3d 542 (3d Cir. 2001) ......................................................... 52

*King v. Burwell,*

    576 U.S. 473 (2015) ................................................................ 27-28

*Lanzetta v. New Jersey,*

    306 U.S. 451 (1939) ...................................................................... 1

*Lyng v. Payne,*

    476 U.S. 926 (1986) ..................................................................... 27

*Mathews v. Eldridge,*

    424 U.S. 319 (1976) ..................................................................... 51

*Nat'l Council of Resistance of Iran v. Dep't of State,*

    251 F.3d 192 (D.C Cir. 2001) ............................................. 51, 53-54

*Oceana, Inc. v. Locke*,

    670 F.3d 1238 (D.C. Cir. 2011) ....................................................... 25

*Oceana, Inc. v. Ross*,

    920 F.3d 855 (D.C. Cir. 2019) ......................................................... 25

*Olenhouse v. Commodity Credit Corp.*,

    42 F.3d 1560 (10th Cir. 1994) ........................................................ 27

*Pharm. Research & Mfrs. of Am. v. Fed. Trade Comm'n*,

    790 F.3d 198 (D.C. Cir. 2015) ................................................... 27, 37

*Rakhimov v. Gacki*,

    19-cv-2554 (JEB) (D.D.C. April 20, 2020) ...................................... 48

*Shaffer v. Heitner*,

    433 U.S. 186 (1977) ......................................................................... 37

*Transohio Sav. Bank v. Director, OTS*,

    967 F.2d 598 (D.C. Cir. 1992) ........................................................ 26

*United States v. Williams*,

    553 U.S. 285 (2008) ......................................................................... 38

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,

    455 U.S. 489 (1982) ......................................................................... 38

*Zevallos v. Obama*,

    10 F. Supp. 3d 111 (D.D.C. 2014), *aff'd*,

    793 F.3d 106 (D.C. Cir. 2015) ....................................... 25, 44, 52, 54

## STATUTES AND REGULATIONS

5 U.S.C. § 706 ................................................................... 26

21 U.S.C. § 1901 ......................................................... 2, 5, 6, 7

21 U.S.C. § 1902 ................................................................. 7

21 U.S.C. § 1903 ........................................................... 29, 34

21 U.S.C. § 1904 ........................................ 8, 9, 10, 20, 22, 28, 29, 30, 31,
34, 35, 40, 41, 42, 45, 46, 48, 50

21 U.S.C. § 1907 ............................................................... 29

28 U.S.C. § 1291 ............................................................... 5

28 U.S.C. § 1331 ............................................................... 5

## RULES

Fed. R. Civ. P. 56(a) ......................................................... 25

## CONGRESSIONAL RECORD

H.R. Rep. No. 106-457 ................................... 21, 28, 30, 31, 35, 36

## GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| OFAC | Office of Foreign Assets Control |
| Kingpin Act | Foreign Narcotics Kingpin Designation Act |
| SDNT | Specially Designated Narcotics Trafficker |

## INTRODUCTION

At a time when the Executive Branch has escalated its use of economic sanctions in an unprecedented manner, this case addresses an important question: whether the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC")—the agency tasked with implementing and administering U.S. economic sanctions—can impose sanctions, including on persons protected by the United States Constitution, without providing fair notice as to what conduct is deemed sanctionable by law?

Fair notice is a bedrock principle of our constitutional law, requiring that the government inform those under its jurisdiction what its laws either require or forbid. *See, e.g.*, *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) ("All are entitled to be informed as to what the State commands or forbids."). This principle is as applicable in the context of administrative law as elsewhere, as the Supreme Court has routinely reaffirmed "the principle that agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.'" *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012)

(citing *Gates & Fox Co. v. Occupational Safety and Health Review Comm'n*, 790 F.2d 154, 156 (C.A.D.C. 1986) (Scalia, J.)).

Appellees acted without regard for this foundational principle when they imposed sanctions on Appellant Samark Jose Lopez Bello and upended his life for purportedly engaging in conduct that had not been sanctionable at the time of designation. Specifically, Appellant—who, as the district court concluded, merited constitutional protection under the Fifth Amendment's Due Process Clause—was derivatively designated for purportedly providing material support to, and acting for or on behalf of, a specially designated narcotics trafficker. App. 106. Yet, the person to whom Appellant was alleged to provide material support, and act for or on behalf of, had not been a specially designated narcotics trafficker at the time of Appellant's own designation under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 *et seq*. Indeed, that person—Tareck Zaidan El-Aissami Maddah—was designated simultaneously with Appellant—i.e., El Aissami was not subject to sanctions or identified as a specially designated narcotics trafficker until the time of Appellant's own designation under the Kingpin Act.

This rendered Appellees' action against Appellant unlawful. First, OFAC's designation of Appellant simultaneous with that of El Aissami was inconsistent with the plain language of the Kingpin Act and Congress' clear intent in enacting the legislation. Second, at the time of his designation, Appellant had no reason to know that dealings with El Aissami could be sanctionable under the Kingpin Act, as El Aissami himself was not subject to sanctions under the law or otherwise identified as a specially designated narcotics trafficker at the time. In short, OFAC designated Appellant without adhering to the constitutional requirement that it provide fair notice of conduct made sanctionable by law.

Notably, recent challenges to OFAC's actions have almost universally involved foreign nationals regarded as being without any constitutional protection under U.S. law. Considering the purported national security implications of each case, courts have refrained from impeding OFAC's authority to impose economic sanctions. Even in those more distant times where U.S. persons challenged OFAC's authority to impose sanctions on them, courts adjudicated matters in the shadow of the September 11 attacks on U.S. soil. In that context, courts were careful not to stymie timely action by the Executive Branch even while ensuring

3

that OFAC observed the basic requirements of due process under our law. *See, e.g.*, *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012); *Holy Land. Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002).

Here, though, Appellant is a foreign national who was determined by the district court to have the 'substantial connections' required to merit constitutional protection. App. 175-178. This case, unlike those most recently before this Court and the district court, involves how OFAC may wield its authority towards those guarded by the protections of the U.S. Constitution.

It is our view that the challenged action here—if permitted to stand—gives rise to a dangerous accumulation of power and authority by OFAC. Already administering broad criteria for designation under sanctions authorities that invite arbitrary and discriminatory use, the challenged action, if left undisturbed, would permit OFAC to use its powers without observance of the fair notice requirements of the Due Process Clause or the statutory limits intended by Congress. For the reasons discussed below, this Court should not grant its imprimatur to

Appellees' unlawful action imposing sanctions on Appellant nor to the growing accretion of Executive power that such action would allow.

## STATEMENT OF JURISDICTION

On December 21, 2022, the United States District Court for the District of Columbia issued a final order under review. The court had jurisdiction over the matter pursuant to 28 U.S.C. § 1331. Appellant filed a timely notice of appeal on February 19, 2023. The Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether Appellees exceeded the scope of their statutory authority under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq*., by derivatively designating Appellant simultaneous with the designation of Tareck Zaidan El-Aissami Maddah;

2.     Whether Appellees failed to provide fair notice of conduct made sanctionable in violation of the Due Process Clause of the Fifth Amendment by derivatively designating Appellant simultaneous with the designation of Tareck Zaidan El-Aissami Maddah; and

3.     Whether Appellees have failed to provide adequate notice of the basis for their determination that Appellant meets the criteria for

designation under the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq*., in violation of the Due Process Clause of the Fifth Amendment.

## STATUTES AND REGULATIONS INVOLVED

Appellant has set forth the relevant statutory and regulatory provisions in an addendum to this brief.

## STATEMENT OF THE CASE

### A.   Background

#### 1.   Appellant

Appellant is a national of Venezuela and Italy. App. 53. Appellant is a prominent entrepreneur in the fields of industrial engineering, the trading of commodities and equipment, and logistics for the oil and gas industry. Ap. 54. Appellant is the Chief Executive Officer and President of Profit Corporation, C.A., which he has developed into a market leader in the Venezuelan energy market in the areas of solutions engineering, procurement, and construction. Ap. 54. Appellant also operates Yakima Trading Corporation, which provides professional services for the Venezuelan oil and gas industry, including trading of ferrous materials as well as the procurement of materials and equipment necessary for

high-quality prefabricated housing to shelter crews in the oil industry. *Id*. Appellant also founded Postar—a logistics company that sources building materials and ships them to Venezuela in housing kits that provided easy access to dignified housing for people living in poverty. *Id*.

At the time of his designation, Appellant held two United States visas—an L1 visa ("temporary worker" visa) and a B1/B2 visa ("business or tourism visitor")—and maintained a residence in the United States. Ap. 75; Ap. 85-86. Appellant also owned and operated multiple companies in the United States. Ap. 76; Ap. 88.

## 2. Foreign Narcotics Kingpin Designation Act

On December 3, 1999, the President signed into law the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq*. The Kingpin Act was designed to "provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, whose activities threaten the national security, foreign policy, or economy of the United States." 21 U.S.C. § 1902.

In support of this objective, the Kingpin Act provides authority to the Secretary of the Treasury, acting in consultation with other agencies, to designate:

- Any foreign person materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker or foreign persons designated by the Secretary of the Treasury pursuant to the Kingpin Act;

- Any foreign person owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker or foreign persons designated by the Secretary of the Treasury pursuant to the Kingpin Act; and

- Any foreign person playing a significant role in international narcotics trafficking.

21 U.S.C. § 1904(b). Persons whose are designated pursuant to these authorities are subject to blocking sanctions under the Kingpin Act. *Id*. The Kingpin Act prohibits any transaction or dealing by a U.S. person, or within the United States, in the property or property interests of a

foreign person subject to sanctions pursuant to 21 U.S.C. § 1904(b). It further prohibits any transaction or dealing by a U.S. person, or within the United States, that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate, the Kingpin Act. 21 U.S.C. § 1904(c).

### 3.    The February 13, 2017 Designation

On February 13, 2017, OFAC designated Tareck Zaidan El-Aissami Maddah as a Specially Designated Narcotics Traffickers ("SDNT") pursuant to the Kingpin Act for playing a significant role in international narcotics trafficking. App. 108-09.

Simultaneous with El Aissami's designation, OFAC designated Appellant as an SDNT pursuant to the Kingpin Act for purportedly providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of El Aissami and acting for or on behalf of El Aissami. App. 108-09, 120. OFAC also designated or identified as blocked property thirteen companies alleged to be owned or controlled by Appellant, including five U.S. companies. App. 124. As a result of this designation, Appellant's name is included on OFAC's List of Specially Designated Nationals and Blocked Persons, and

Appellant's property and interests in property within the jurisdiction of the United States are blocked. App. 106. In addition, foreign persons engaged in transactions or dealings with, or otherwise involving, Appellant may be subject to sanctions pursuant to the Kingpin Act. *See, e.g.*, 21 U.S.C. § 1904(b).

A press release issued at the time of the designation alleged that Appellant "is a key frontman of El Aissami and in that capacity launders drug proceeds." App. 108-09. OFAC's press release further alleges that Appellant "is used by El Aissami to purchase certain assets" and "handles business arrangements and financial matters for El Aissami," which "generat[es] significant profits as a result of illegal activity benefiting El Aissami." App. 108.

The press release noted that Appellant "oversees an international network of petroleum, distribution, engineering, telecommunications, and asset holding companies." App. 108. The press release further stated that "[f]ive U.S. companies owned or controlled by Appellant . . . ha[d] also been blocked as part of [the designation] action," along with "a U.S.-registered aircraft . . ." *Id*. The press release noted that "significant real

property and other assets in the Miami, Florida area tied to [Appellant] ha[d] been blocked." App. 109.

### 4.    The Administrative Record

By letters dated April 12, 2017 and May 22, 2017, OFAC disclosed the unclassified version of the administrative record underlying its decision to designate Appellant and those U.S. entities under his purported ownership and control, as well as its blocking of his residential property in Florida. App. 111-12, 113-53. The records included the evidentiary memorandum setting forth the factual and legal bases for Appellees' designation of Appellant pursuant to the Kingpin Act.

Substantial portions of the record relating to his designation are redacted in the disclosed version of that record. App. 120-23. This includes the section of the memorandum relating to the factual bases for the designation, with all information—except for part of a header and a single paragraph relaying the contents of a local Venezuelan news article—being redacted. *Id*. In other words, fourteen of fifteen paragraphs in the portion of the record identifying the bases for Appellant's designation are completely redacted in the version of the record disclosed to Appellant. *Id*.

The scope of the redactions in the disclosed administrative record prohibitively bar Appellant from understanding the factual bases for his designation—i.e., the information and evidence relied upon by OFAC in determining that Appellant meets the criteria for designation under the Kingpin Act. However, the evidentiary memorandum states that "[t]he information . . . in this memorandum . . . provide[s] reason to believe that [Appellant] is a 'foreign person' who is materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of an individual proposed for designation in th[e] memorandum; and/or owned, controlled, or directed by, or acting for or on behalf of, an individual proposed for designation in th[e] memorandum." App. 113-14. The record also states that "the evidence . . . in this memorandum . . . provide[s] reason to believe that each of the U.S. entities and aircraft identified [therein] is property within the United States that is owned or controlled by [Appellant] . . ." App. 114. The extent of the redactions made to the administrative record, including, most particularly, the evidentiary memorandum, set a prohibitive bar to Appellant from accessing this information or evidence.

12

## 5.    The Unclassified Summaries

On July 18, 2017, OFAC issued unclassified summaries setting forth additional unclassified, non-privileged, and otherwise releasable information from the administrative record. App. 156. These unclassified summaries, according to OFAC, "complete[d] OFAC's response to [Appellant's] request for releasable information" relating to the bases for his designation pursuant to the Kingpin Act. App. 155. The unclassified summaries allege the following:

- Appellant is the "frontman" for El Aissami.

- Appellant is in charge of laundering drug proceeds through Petroleos de Venezuela, S.A. (PDVSA) and organizing the air and maritime cocaine routes to transport cocaine to the Middle East and Asia. Appellant was also used by El Aissami to purchase news outlets in Venezuela, which were the most critical of the Chavez regime, with Venezuelan government funds in order to influence public opinion in Venezuela.

- Appellant is identified as the "business representative," "money manager," and "money launderer" for El Aissami.

- Appellant handles financial matters for El Aissami. Appellant manages Venezuelan bonds, as a private party, and conducts unspecified deals which generate significant profits. This activity is done to benefit El

13

> Aissami via Appellant. Appellant has also procured
> vehicles in the United States that were transported to
> Venezuela and ultimately went to El Aissami and other
> Venezuelan government officials.

App. 156.

### 6.    Execution Against Appellant's Properties

As a result of Appellant's designation, including the blocking of his

U.S.-based properties and assets and the allegations leveled against him,

third-party plaintiffs have successfully executed, on outstanding

judgments against the Revolutionary Armed Forces of Columbia (FARC)

against properties owned or controlled by Appellant in the United States.

App. 68-73. Thus, Appellant has been deprived of millions of dollars'

worth of U.S. properties and assets due to his designation under the

Kingpin Act. App. 68-69.

### 7.    The Amended Complaint

On October 4, 2021, Appellant filed an Amended Complaint. App.

49-83. The Amended Complaint, *inter alia*, challenged Appellees'

designation of Appellant under the Kingpin Act for being in excess of

statutory jurisdiction, limitations, or authorities, and for being contrary

to constitutional rights, power, privilege, or immunity, in violation of the

Administrative Procedure Act. App. 78-79. The Amended Complaint also challenged OFAC's failure to provide fair notice when designating Appellant pursuant to the Kingpin Act in violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. App. 79-80. Finally, for purposes relevant to this appeal, the Amended Complaint challenged Appellees' failure to accord Appellant with constitutionally adequate notice of the reasons for his designation under the Kingpin Act, in violation of the Due Process Clause. App. 81.

### B.    The Ruling Presented for Review

On December 21, 2022, the district court issued a memorandum opinion and order granting in part and denying in part Appellees' motion to dismiss or, in the alternative, for summary judgment and denying as moot Appellant's cross-motion for summary judgment. App. 157-191.

The district court first rejected Appellant's argument that Appellees' designation of Appellant constituted arbitrary and capricious agency action under the APA. App. 165-174.

The district court also concluded that the simultaneous designation of El Aissami and Appellant did not violate the APA. The district court found that "the plain language of the Kingpin Act does not require that

El Aissami must have been designated before the OFAC could designate [Appellant]," stating that Appellant "essentially read[] a temporal requirement into the plain language of the Kingpin Act." App. 172-73.

The district court also rejected Appellant's argument that because he was designated simultaneous with El Aissami, he was not engaged in any sanctionable conduct at the time of designation. App. 173. The court held that the argument "that persons cannot be designated based on conduct predating other related designations" had been rejected by "members of this Court and the D.C. Circuit." App. 173 (internal citations omitted). Further, the court held that "the use of such evidence to support designation decisions is permissible when the relationship between the [Appellant] and the person or organization it is linked to has not been 'severed.'" *Id.*

With respect to Appellants' constitutional claims, the district court first held Appellant "ha[d] established the requisite 'substantial connections' necessary to assert constitutional claims, despite the fact that he is not a United States citizen." App. 177. Appellant established such substantial connections on the basis of "[s]everal factors," including that Appellant had "assert[ed] that at the time of his designation, '[he]

held two U.S. visas[,] . . . maintained a residence in the United States[,] and owned and operated multiple companies in the United States." App. 177. In addition, the district court noted that Appellant "also claim[ed] that he has property interests in several United States properties blocked by the OFAC as a result of the designation" and "contend[ed] that he 'resided . . . [in] Coral Gables, F[lorida,]' 'two of [his] minor children are U.S. citizens[,]' and 'his wife was also [a U.S.] resident under a 'temporary worker' visa.'" App. 178.

The district court rejected Appellant's claim "that his simultaneous designation along with El Aissami did not provide him with fair notice of the sanctionable conduct under the Kingpin Act," finding Appellant to be "essentially request[ing] pre-designation notice . . ." App. 180. The court stated that, "under both the [International Emergency Economic Powers Act] and the Kingpin Act, the OFAC 'need not provide pre-deprivation notice and hearing, given the government's compelling interest in the immediate blocking of assets upon designation.'" App. 180. Accordingly, the court "conclude[d] that the OFAC did not violate the [Appellant's] due process rights by not providing him with pre-designation notice." App. 181. Adopting a test for whether pre-deprivation notice is required, the

17

district court found that Appellees "ha[d] articulated reasoning sufficient to show that 'the [blocking action] was necessary to secure an important governmental interest[,] and that 'there [was] a special need for very prompt action.'" App. 181.

The district court further held that Appellees' "interpretation of the Kingpin Act's allowance for simultaneous designation is reasonable" and "did not deprive [Appellant] of his rights under the APA, nor under the Fifth Amendment." App. 182. The district court noted that "[n]ot only is [Appellees' interpretation] a reasonable interpretation based upon the plain language of the statute, but it also comports with the policy reasons underlying the adoption of the Kingpin Act and its predecessor . . ." App. 183. With respect to whether Appellees' interpretation of the Kingpin Act deprived Appellant of fair notice by failing to provide him with adequate notice of the substance of the law, the district court found that Appellees "ha[d] satisfied [their] notice obligation here based on [their] 'public statements' and other interactions with the public prior to the [Appellant's] designation." App. 183.

The district court also found that "the evidence disclosed to the [Appellant] regarding the circumstances of his designation were

18

sufficient and did not deprive him of fair notice or a meaningful opportunity to be heard." App. 186. According to the district court, OFAC "published notice of the designation in the Federal Register, which constitute[d] 'more than ample' notice of agency action"; OFAC "publishe[d] [a] press release[] on its website informing the public of [the] designation[]"; and OFAC "provided the [Appellant] with unclassified summaries of the information that was classified in the redacted administrative record." App. 186-87.

The district court did note that "the heavily redacted administrative record alone might not have been sufficient for the [Appellant] to understand why the OFAC designated him." App. 188. However, the district court concluded that the full sum of disclosures— inclusive of several unclassified summaries—provided to Appellant "provided him sufficient notice . . . to comprehend the basis for and meaningfully challenge his designation and therefore [his] due process rights were not violated." App. 188.

Finally, the district court rejected Appellant's Fourth Amendment claims, finding the Fourth Amendment "inapplicable," or, alternatively in the event that the blocking order did constitute a "seizure" within the

meaning of the Fourth Amendment, that the blocking order was issued neither "unreasonably or without probable cause." App. 188-90.

## C.    Summary of Argument

The court below misinterpreted the statutory language of the Kingpin Act and failed to review the relevant legislative history supporting a plain language reading of the Kingpin Act. Further, the lower court confused the nature of Appellant's fair notice claim and misapplied the fair notice doctrine in reviewing Appellant's challenge. Finally, the lower court failed to apply the relevant case law to the limited disclosures provided by Appellees regarding the bases for Appellant's designation under the Kingpin Act. In doing so, the district court erred in holding as permissible Appellant's designation under the Kingpin Act and as being consistent with due process.

First, Appellees acted inconsistent with the plain language of the Kingpin Act by designating Appellant for purportedly providing material assistance, support, or services, and acting for or on behalf of, a person that was not subject to sanctions under the Kingpin Act at the time of Appellant's alleged conduct. Specifically, § 1904(b)(2) and (3) of the Kingpin Act authorize the imposition of sanctions on foreign persons who

provide material assistance, support, or services in support of the international narcotics trafficking activities of, or act for or on behalf of, a person who is *subject* to sanctions under the Kingpin Act. However, the person to whom Appellant is alleged to have provided such material assistance, and on whose behalf Appellant is alleged to have acted, was not a person *subject* to sanctions under the Kingpin Act at the time of the purported conduct. By concurrently designating Appellant with the person to whom he was alleged to have provided material assistance, support, or services, and on whose behalf he was alleged to have acted, Appellees acted in excess of statutory authority under the Kingpin Act.

This plain language reading of the Kingpin Act is supported—if not expressly confirmed—by the legislative history underlying the statute. *See* H.R. Rep. No. 106-457. Indeed, the Kingpin Act was styled after the successful use of sanctions authorities in Executive Order 12978 targeting the Cali Cartel. As the House report makes clear, Executive Order 12978 limited the reach of its material support designation criteria to persons providing material support to "*named* drug kingpins" or "*already-designated*" specially designated narcotics traffickers. H.R. Rep. No. 106-457 at 46. (emphasis added).

21

Considering the plain language reading of the Kingpin Act, as well as the relevant legislative history set forth in the House report accompanying its enactment, Appellees' concurrent designation of Appellant and Tareck Zaidan El Aissami Maddah was clearly beyond the scope of Appellees' authorities under 21 U.S.C. § 1904(b)(2) and (3).

Second, the district court adopted the wrong legal standard when reviewing Appellant's fair notice claim under the Due Process Clause. Indeed, rather than determining if Appellant had fair notice as to whether his purported provision of material assistance, support, or services to El Aissami were sanctionable under § 1904(b)(2) or (3) of the Kingpin Act, the district court treated Appellant's claim as one seeking pre-deprivation notice of his designation. App. 180-81.

Appellant, however, is not contesting whether pre-deprivation notice was required; rather, Appellant merely claims that he had no fair notice that the conduct for which he was sanctioned exposed him to legal consequences under § 1904(b)(2) or (3) of the Kingpin Act. As this Court is aware, the fair notice doctrine has long been held as fundamental to due process so as to ensure that regulated persons have "fair notice of conduct that is forbidden or required," *Karem v. Trump*, 960 F.3d 656,

22

664 (D.C. Cir. 2020). Thus, Appellees' designation of Appellant for conduct that was not sanctionable at the time of its occurrence triggers immediate fair notice concerns. The district court treatment of Appellant's claim as one seeking pre-deprivation notice, rather than one regarding fair notice, suggests that the court failed to appreciate the nature of the claim.

Moreover, the district court incorrectly found that case law in this Circuit supported the kind of concurrent designation at issue here and concluded that—because Appellees' interpretation of the Kingpin Act was reasonable—Appellant's fair notice claim must fail. But Appellant's fair notice claim is not reliant on whether this Court adopts his plain language reading of the Kingpin Act. Indeed, even if the Kingpin Act were to allow the kind of concurrent designation at issue here, Appellant's fair notice claim would have independent validity, as no legislative enactment can absolve the Appellees of their need to adhere to their due process obligations.

Finally, the district court erred in holding that OFAC's disclosures to Appellant regarding the bases for his designation met its notice obligations under the Due Process Clause of the Fifth Amendment. While

23

recognizing that Appellant was owed constitutional due process given his "substantial connections" to the United States, the district court nevertheless failed to apply the relevant case law and analyze the limited disclosures made by Appellees regarding Appellant's designation in light of that case law.

Whether Appellees' disclosures constituted notice sufficient under the Due Process Clause is entirely reliant on the unclassified summaries of otherwise privileged information provided to Appellant, as even the district court acknowledges. App. 188. But, for unclassified summaries to be adequate to meet Appellees' notice obligations under the Due Process Clause, the summaries must be "sufficiently specific," detailing the 'who,' 'what,' 'when,' and 'where' of the allegations relied upon by Appellees to support its designation of Appellant. *Fares v. Smith*, 901 F.3d 315, 324 (D.C. Cir. 2018).

In this matter, Appellees' summaries fall far short of the standard set in *Fares*. The district court, however, not only failed to review the unclassified summaries in light of *Fares*, but entirely omitted the fact that *Fares* sets the standard for review of such unclassified summaries. To properly assess whether Appellees' disclosures sufficed for purposes

of due process, Appellees' unclassified summaries must be scrutinized under the proper legal standard. For these reasons, the district court's ruling should be reversed.

## D.    Standard of Review

The Court reviews a district court's grant of summary judgment *de novo. See, e.g.*, *District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46, 54 (D.C. Cir. 2015). The Court "review[s] . . . the agency's action directly, giving 'no particular deference' to the district court's view of the law.'" *Oceana, Inc. v. Ross*, 920 F.3d 855, 860 (D.C. Cir. 2019) (citing *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1240 (D.C. Cir. 2011)).

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a court reviews agency action under the APA, "[t]he entire case on review is a question of law, and only a question of law," *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9

(D.D.C. 2012). When reviewing a district court's grant of summary judgment as to a question of law, this Court is empowered to reverse the district court's ruling and grant a cross-motion for summary judgment. *See, e.g., Am. Bankers Assn. v. Nat'l Credit Union Admin.*, 934 F.3d 649 (D.C. Cir. 2019).

## ARGUMENT

**I.    OFAC Acted in Excess of Its Statutory Authority Under the Kingpin Act When It Concurrently Designated Appellant with Tareck Zaidan El-Aissami Maddah**

### A.    The APA Renders Unlawful Agency Action in Excess of Statutory Authority

The APA requires courts to set aside and hold unlawful agency action, findings, and conclusions determined to be in excess of statutory jurisdiction, limitations, or authority. 5 U.S.C. § 706(2)(C). As this Court has explained, "[i]t is 'central to the real meaning of 'rule of law,' [and] not particularly controversial' that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so." *Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 621 (D.C. Cir. 1992) (holding that "[a]gency actions beyond delegated authority are 'ultra vires,' and courts must invalidate them."). Because an "agency's power is

no greater than that delegated to it by Congress," *Lyng v. Payne*, 476 U.S. 926, 937 (1986), a reviewing court's "essential function" is to "determin[e] whether an agency acted within the scope of its authority." *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 801 (10th Cir. 2010) (quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994)).

When reviewing claims that an agency acted beyond the scope of its statutory authority, courts typically employ "the well-known *Chevron* framework." *Children's Hops. Ass'n v. Azar*, 933 F.3d 764, 770 (D.C. Cir. 2019); *see also Pharm. Research & Mfrs. of Am. v. Fed. Trade Comm'n*, 790 F.3d 198, 204 (D.C. Cir. 2015); *Ass'n of Private Sector Coll. & Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012). The *Chevron* doctrine requires courts first "to determine whether Congress has directly addressed the 'precise question at issue.'" *Pharm. Research & Mfrs. of Am.*, 790 F.3d at 204 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984)). If a court determines that Congress has addressed the issue in question, then the inquiry ends there. However, if Congress has not directly addressed the matter at issue, then a reviewing court asks "whether the agency's interpretation is reasonable." *Children's Hosp. Ass'n*, 933 F.3d at 770 (quoting *King v.*

*Burwell*, 576 U.S. 473, 485 (2015)). If determined to be reasonable, then the court upholds the agency action.

### B. OFAC Acted Beyond Its Statutory Authority Under the Kingpin Act By Concurrently Designating Appellant With El Aissami

By designating Appellant concurrent with El Aissami, OFAC violated the APA by acting in excess of its statutory authorities under the Kingpin Act. App. 78-79. Specifically, the plain language of the Kingpin Act renders sanctionable the provision of material support or assistance to the international narcotics trafficking activities of a person who is *subject* to sanctions under the Kingpin Act. *See* 21 U.S.C. § 1904(b)(2). (emphasis added). As noted above, this plain language reading is provided additional confirmation by review of the legislative history of the Kingpin Act. *See* H.R. Rep. No. 106-457. Because El Aissami was not a person subject to sanctions under the Kingpin Act at the time of Appellant's designation, OFAC's imposition of sanctions on Appellant was inconsistent with its authorities under the Kingpin Act in violation of the APA.

Notably, The Kingpin Act provides, *inter alia*, that the Secretary of the Treasury (or his or her delegees) can designate, and impose sanctions

28

on, foreign persons who are materially assisting in, or providing financial or technological support or services for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker or any person designated pursuant to 21 U.S.C. § 1904(b).[1] 21 U.S.C. § 1904(b)(2). The Kingpin Act also provides that the Secretary of the Treasury (or his or her delegees) can designate, and impose sanctions on, foreign persons who act for or on behalf of a significant foreign narcotics trafficker or a person designated pursuant to 21 U.S.C. § 1904(b). 21 U.S.C. § 1904(b)(3). Each of these separate designation criteria thus require that—for conduct to be sanctionable under the Kingpin Act—it must be performed to or in support of, or for or on behalf of, a person that is already subject to sanctions under the Kingpin Act—i.e., a significant foreign narcotics trafficker or a person designated pursuant to 21 U.S.C. § 1904(b).

---

[1] The Kingpin Act defines the term *significant foreign narcotics trafficker* to mean any foreign person that plays a significant role in international narcotics trafficking, that the President has *determined* to be appropriate for sanctions pursuant to chapter 24 of title 21, and that the President has publicly *identified* in the report required under 21 U.S.C. § 1903(b) or (h)(1). 21 U.S.C. § 1907(7). (emphasis added).

In the instant matter, however, El Aissami was not subject to sanctions under the Kingpin Act until the time of Appellant's own designation. App. 103, 106, 108-09, 113-14. The significance of this is that Appellant could not have engaged in conduct made sanctionable by § 1904(b)(2) or (b)(3) of the Kingpin Act, as El Aissami was not subject to sanctions under the Kingpin Act at the time of the alleged conduct set forth in the administrative record.

This plain language reading of the Kingpin Act is confirmed by the legislative history as well. Indeed, the House report expressly stated that the Kingpin Act was styled after "the Colombia IEEPA-SDNT executive order," imposing sanctions on "foreign firms or individuals that 'materially assist in or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities' of the *named* drug kingpins or *other, already-designated* SDNTs." H.R. Rep. No. 106-457 at 46 (emphasis added). The House report also noted that "[i]n implementing the Colombia IEEPA-SDNT program, OFAC analysts identify and research foreign targets that can be linked by evidence to individuals or entities *already designated* pursuant to [Executive Order] 12978." *Id*. at 47 (emphasis added). This language has added significance

30

considering that the designation criteria set forth in Executive Order 12978 was effectively borrowed by the Kingpin Act. Exec. Order 12978 (Oct. 21, 1995) (authorizing the Secretary of the Treasury to impose sanctions on foreign persons determined "materially to assist in, or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities of persons designated in or pursuant to this order."); H.R. Rep. 106-457 at 43 (stating that "[t]he legal precedent for [the Kingpin Act] was the successful application of sanctions in 1995 and 1996 against Cali Cartel narco-trafficking organization and its key leaders" and that the Kingpin Act "is intended to follow up on the success of the Colombian SDNT precedent by applying similar U.S. Government authorities and resources . . .").

For Congress to have considered the material support designation criterion of Executive Order 12978 as requiring that the persons to whom such support is provided be "named drug kingpins" or "already-designated SDNTs" clearly establishes that the plain language of the Kingpin Act means what it says—i.e., that the authorities set forth in § 1904(b)(2) and (b)(3) of the Kingpin Act were intended to be limited to targeting foreign persons engaged in sanctionable conduct involving

significant foreign narcotics traffickers or persons who were already subject to sanctions under the Kingpin Act.

In this matter, OFAC designated Appellant pursuant to §§ 1904(b)(2) and (b)(3) of the Kingpin Act for providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of, and acting for or on behalf of, El Aissami. App. 106, 120. However, El Aissami was only designated concurrently with Appellant—meaning, that El Aissami was not a person subject to sanctions at the time of Appellant's own designation. Or, as the House managers overseeing the drafting of the Kingpin Act would phrase it, El Aissami was not a "named drug kingpin" or an "already-designated [Specially Designated Narcotics Trafficker]." Absent El Aissami's prior designation under the Kingpin Act, the alleged conduct for which Lopez Bello was sanctioned could not have been sanctionable under the Kingpin Act. Moreover, even if it were relevant to the legal question—which it is not—OFAC's administrative record fails to allege any ongoing activity by Appellant on behalf of El Aissami, instead using past tense language to describe Appellant's purportedly sanctionable conduct. Thus, in all

respects, OFAC acted beyond the scope of its statutory authorities in violation of the APA.

## C.    The District Court Erred in Interpreting the Kingpin Act's Statutory Text

The district court erroneously concluded that the plain language of the Kingpin Act did not prohibit OFAC from simultaneously designating Appellant with El Aissami and that OFAC's interpretation of the relevant statutory language was reasonable under the *Chevron* doctrine. App. 171-74. This erroneous conclusion led the district court to uphold the challenged action. App. 174.

In reviewing Appellant's arguments below, the district court stated that Appellant "essentially read[] a temporal requirement into the plain language of the Kingpin Act." App. 172 (emphasis in original). As a result, the court concluded that "there is no statutory requirement that a narcotics trafficker must be designated <u>before</u> any of his supporters, rather than as part of a related designation." App. 172 (emphasis in original). According to the district court, "the plain language of the Kingpin Act does not require that El Aissami must have been designated before the OFAC could designate [Appellant] . . ." App. 172-73.

The district court's reading, however, is in error, as evidenced both by the plain language of the Kingpin Act and Congress' contemporaneous interpretation of the statute. As noted above, the plain language of the Kingpin Act is quite clear: the Secretary of the Treasury is authorized to designate, and impose sanctions on, foreign persons who are materially assisting in, or providing financial or technological support or services for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker *or any person designated pursuant to 21 U.S.C. § 1904(b).*[2] 21 U.S.C. § 1904(b)(2) (emphasis added).

The emphasized portion of that designation criterion makes clear that the person to whom such material support is provided must be either a significant foreign narcotics trafficker, as that term is defined by the Kingpin Act, or a person subject to sanctions under the Kingpin Act. In other words, what makes conduct sanctionable is whether it is

---

[2] The Kingpin Act defines the term *significant foreign narcotics trafficker* to mean any foreign person that plays a significant role in international narcotics trafficking, that the President has determined to be appropriate for sanctions pursuant to chapter 24 of title 21, and that the President has publicly identified in the report required under 21 U.S.C. § 1903(b) or (h)(1).

undertaken in support of, or for or on behalf of, a person subject to sanctions under the Kingpin Act. The district court confuses Appellant's argument by claiming that he seeks to insert a "temporal requirement" that is otherwise absent from the Kingpin Act. App. 172. But the legal question that Appellant raised is not when conduct becomes sanctionable under the Kingpin Act, but rather what conduct is sanctionable.

In the instant case, what makes conduct sanctionable under § 1904(b)(2) or (b)(3) of the Kingpin Act is that a foreign person provides material support to, for, or on behalf of, a person subject to sanctions under the Kingpin Act. Again, at the time of his designation, Appellant could not have met the criteria for designation under §§ 1904(b)(2) or (b)(3) because El Aissami—the person to whom Appellant is alleged to have provided material support—was not subject to sanctions under the Kingpin Act.

This latter reading is consistent with Congress's contemporaneous interpretation of the statutory text, as discussed above. As the relevant House report makes clear, the Kingpin Act was expressly styled after Executive Order 12978. H.R. Rep. No. 106-457 at 46 (emphasis added). Again, that Executive order authorized sanctions on "foreign firms or

35

individuals that 'materially assist in or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities' of the *named* drug kingpins or *other, already-designated* SDNTs." H.R. Rep. No. 106-457 at 46 (emphasis added). Indeed, noting that the Kingpin Act followed the precedent established by implementation of Executive Order 12978, the House report stated that—under Executive Order 12978—"OFAC analysts identify and research foreign targets that can be linked by evidence to individuals or entities *already designated* pursuant to [Executive Order] 12978." *Id.* at 47. (emphasis added). The legislative history makes clear that—in replicating the successes of a prior sanctions program targeting narcotics traffickers in Colombia—the statutory language at issue was intent on limiting its application to foreign persons providing material support to persons *already subject to sanctions* under the Kingpin Act.

The district court does not discuss this legislative history at all and, in a conclusory manner, merely disfavors the plain language reading of the Kingpin Act offered by Appellant. *See* App. 172-73. But this legislative history is critical to assessing the statutory text, particularly where an agency is alleged to have acted beyond the scope of its statutory

authority. *See Pharm. Research & Mfrs. of Am.*, 790 F.3d at 204 (the *Chevron* doctrine requires courts first "to determine whether Congress has directly addressed the precise question at issue") (internal quotations omitted). The district court's failure to engage in an analysis of the statutory text, including its legislative history, and its finding that the Kingpin Act allows Appellees to engage in the challenged action constitutes reversible error.

## II.    OFAC Failed to Provide Fair Notice of Conduct Made Sanctionable Under the Kingpin Act in Violation of the Due Process Clause of the Fifth Amendment to the Constitution

### A.    Appellant Has a Fifth Amendment Due Process Right to Fair Notice of Conduct Prohibited or Required by Law

Fair notice is "[a] fundamental principle in our legal system," holding "that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). Fair notice "is implicated" not just in the context of criminal matters, but also where government imposes "civil penalties." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 n.22 (1996) (citing *Shaffer v. Heitner*, 433 U.S. 186, 217 (1977) (Stevens, J.,

concurring in judgment)) (emphasis in original). Courts are likely to demand greater clarity with respect to the requirements of law where civil penalties "threaten[] to inhibit the exercise of constitutionally protected rights." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

Civil penalties "fail[] to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Fox Television Stations, Inc.*, 567 U.S. at 253 (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). By adopting this standard, courts ensure "that regulated parties [] know what is required of them so that they may act accordingly," while assisting "those enforcing the law" to refrain from acting "in an arbitrary or discriminatory way." *Fox Television Stations, Inc.*, 567 U.S. at 253 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972)).

In reviewing a fair notice claim and determining whether an agency provided fair notice to those being regulated, courts "ask whether the regulated party received, or should have received, notice of the agency's

interpretation in the most obvious way of all: by reading the regulations." *Fabi Construction Co. v. Sec'y of Labor*, 508 F.3d 1077, 1088 (D.C. Cir. 2007) (quoting *General Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995)). If, "by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform," then the agency has met its burden of providing fair notice under the Due Process Clause. *Id.*

## B.    OFAC Failed to Provide Fair Notice to Appellant That His Purported Conduct was Sanctionable Under the Kingpin Act

OFAC violated Appellant's due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him fair notice of conduct that could subject him to sanctions under the Kingpin Act. App. 79-80. By sanctioning Appellant for purportedly engaging in conduct that was not sanctionable at the time of its alleged undertaking, OFAC "fail[ed] to provide [Appellant] fair notice of what is prohibited" and prevented Appellant from "know[ing] what is required of [him] so that [he] may act accordingly." *Fox Television Stations, Inc.*, 567 U.S. at 253 (internal citations omitted).

The Kingpin Act renders sanctionable the provision of material assistance, support, or services to or in support of the international narcotics trafficking activities of, or acting for or on behalf of, a significant foreign narcotics trafficker or a person that is subject to sanctions under the Kingpin Act. 21 U.S.C. §§ 1904(b)(2) and (b)(3). By its plain meaning, the predicate condition for an OFAC determination that a person is engaged in sanctionable conduct under 21 U.S.C. § 1904(b)(2) or (b)(3) is that there be a sanctioned person to whom the foreign person is providing material assistance, support, or services, or on whose behalf the foreign person is acting. The reverse is also true. Specifically, if a foreign person is providing material assistance, support, or services in support of the international narcotics trafficking activities of, or acting for or on behalf of, a person who is not subject to sanctions under the Kingpin Act, neither § 1904(b)(2) or (b)(3) render sanctionable such conduct.[3]

_____

[3] This is not to argue that OFAC is disabled from addressing such conduct, as other designation criteria—including § 1904(b)(4) of the Kingpin Act—may be utilized to impose sanctions on foreign persons engaging in such conduct. *See* 21 U.S.C. § 1904(b)(4) (authorizing the Secretary of the Treasury to impose sanctions on any foreign person determined to play a significant role in international narcotics trafficking). Rather, the point is that neither § 1904(b)(2) or (b)(3) can be utilized to impose sanctions for such conduct so long as the person to

In the instant case, El Aissami—the person to whom Appellant is alleged to have provided material assistance, support, or services, and on whose behalf Appellant is alleged to have acted—was not subject to sanctions at the time of the alleged conduct. App. 106, 108-09. By this very reason, none of the alleged conduct set forth in the administrative record—which is also alleged using past tense language—serving as the basis for Appellant's designation was sanctionable at the time of its occurrence. Indeed, El Aissami only became a person subject to sanctions under the Kingpin Act concurrently with Appellant's own designation. Thus, Appellant lacked notice that any alleged past dealings with El Aissami—to the extent they occurred as OFAC describes, which they did not—would render him sanctionable under § 1904(b)(2) or (b)(3) of the Kingpin Act until the time of El Aissami's own designation. App. 108-09 (OFAC's press release announcing both El Aissami and Appellant's designations under the Kingpin Act).

Clearly then, Appellant lacked any fair notice that the alleged conduct for which he was designated was sanctionable. Appellant could

---

whom such material assistance, support, or services is being provided is not subject to sanctions under the Kingpin Act.

not have turned to OFAC's regulations to understand that his purported dealings with El Aissami—having allegedly occurred prior to El Aissami's own designation under the Kingpin Act—could render him sanctionable under § 1904(b)(2) or (b)(3) of the Kingpin Act. As El Aissami was not subject to sanctions under the Kingpin Act at the time of Appellant's alleged conduct means that Appellant had neither actual nor constructive notice that such purported conduct could render him subject to sanctions pursuant to § 1904(b)(2) or (b)(3).

For this reason, OFAC violated that fundamental principle of constitutional due process that "laws which regulate persons . . . give fair notice of conduct that is forbidden or required." *Karem*, 960 F.3d at 664. As Appellant was given no notice that the alleged conduct for which he was sanctioned could have rendered him subject to sanctions under § 1904(b)(2) or (b)(3) of the Kingpin Act, he would have been unable to conform his conduct to ensure that he acted consistent with the law. Instead, Appellant was subject to OFAC's arbitrary whim—the exact occurrence for which the fair notice doctrine was designed to protect. *See Fox Television Stations, Inc.*, 567 U.S. at 253 (noting that the doctrine

aids "those enforcing the law [so that they] do not act in an arbitrary or discriminatory way.")

## C. The District Court Erroneously Equated Appellant's Fair Notice Claim to a Request for Pre-Deprivation Notice and Applied the Wrong Standard

The district court erroneously found that OFAC did not violate Appellant's due process right to fair notice of conduct made sanctionable under the Kingpin Act, wrongly regarding Appellant's request that the laws identify what is required or prohibited by law with a request for "pre-deprivation notice." App. 179-82. According to the district court, Appellant's argument that OFAC "did not provide him with fair notice of the sanctionable conduct under the Kingpin Act essentially requests pre-designation notice . . ." App. 180. In the district court's view, Appellant's right to fair notice was "satisfied . . . by the provision of a post-deprivation administrative remedy and the opportunity to submit written submissions to [the] OFAC." App. 180 (internal quotations omitted).

In assessing Appellant's fair notice claim, the district court erroneously adopted a test for whether pre-deprivation notice is required, thereby utilizing the wrong test for determining whether OFAC had provided fair notice consistent with due process to Appellant. App. 179

(stating that "[t]he government must satisfy three requirements in order to show that it was not required to provide notice before taking the challenged action . . .").

By challenging OFAC's action on fair notice grounds Appellant is not seeking pre-deprivation notice. Instead, Appellant is claiming that—by designating him for allegedly providing material support or assistance to El Aissami—OFAC failed to provide fair notice of conduct made sanctionable under the Kingpin Act because El Aissami was not subject to sanctions under the Kingpin Act until Appellant's own designation.

Pre-deprivation notice challenges in the OFAC context—including the cases cited by the district court—involved parties contending that they were "entitled to notice and hearing before [their] designation . . ." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 125 (D.D.C. 2014) (finding that plaintiff "was not entitled to a pre-deprivation notice and hearing"); *see also Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 76 (D.D.C. 2002) (where plaintiff challenged the government for failing to provide notice and a hearing prior to its designation); *Kadi v. Geithner*, 42 F. Supp. 3d 1, 28-29 (D.D.C. 2012) (where plaintiff alleged

that OFAC had failed to give him "adequate time to respond" to the allegations against him before designation).

Appellant is making no similar claim or argument here, and contends that pre-deprivation notice has no relevancy on his claim that OFAC failed to provide him with fair notice of conduct made sanctionable under the Kingpin Act. Indeed, far from requesting prior notice as to his own designation under the Kingpin Act, Appellant contends only that fair notice required OFAC to designate El Aissami prior to imposing sanctions on Appellant pursuant to §§ 1904(b)(2), (3) for any alleged dealings with El Aissami. App. 79-80. While Appellant's fair notice claim is consistent with the statutory claim set forth above, it is also not reliant on his reading of the Kingpin Act. Indeed, regardless of whether this Court regards the Kingpin Act as allowing or prohibiting such concurrent designations as found in this matter, Appellant's due process right to fair notice of conduct made sanctionable under the Kingpin Act was implicated by OFAC's designation of Appellant concurrently with El Aissami. Appellant had no prior notice that El Aissami was a person subject to sanctions under the Kingpin Act and could not tailor his conduct in ways conforming to the demands of the law. Thus, Appellant

faced punitive consequences from OFAC despite being unable to understand that purported dealings with El Aissami could be sanctionable under § 1904(b)(2) or (3) of the Kingpin Act. This, according to this Court's precedent, is anathema to due process, denying Appellant—a regulated party under the Kingpin Act—knowledge of "what is required of them so that they may act accordingly." *Fox Television Stations, Inc.*, 567 U.S. at 253.

The district court also erroneously determined that Appellant had fair notice that his purported provision of material support or assistance to El Aissami exposed him to sanctions under the Kingpin Act. App. 182-85. According to the district court, "the Executive Branch has made clear that it can and will designate multiple specially designated nationals simultaneously," and these designations have been "routinely upheld" by the district court. App. 184.

The district court erred on multiple grounds in this regard. First, whether OFAC provided fair notice to Appellant that the conduct for which he was sanctioned was sanctionable under § 1904(b)(2) or (3) of the Kingpin Act is not dependent on whether OFAC acted consistent with its authorities under the Kingpin Act or not. For instance, it is entirely

plausible that OFAC is able to undertake concurrent designations of the kind at issue here; for example, where the person is not afforded constitutional protections, and where evidence in the record underlying the determination purports to evidence ongoing activities. Here, however, OFAC is barred by due process from doing imposing a designation under the Kingpin Act in the manner it targeted Appellant. This is because Appellant is protected by the Constitution, entitled to fair notice of what is required or prohibited by law, and given that OFAC's findings regarding sanctionable conduct are written in past tense establishing that the alleged conduct occurred prior to the designation.

Second, the claim that OFAC may have previously undertaken concurrent designations of the kind at issue here does not render permissible OFAC's failure to provide fair notice to Appellant. Nor do such prior designation actions act as substitute for proper notice to Appellant as to what conduct is sanctionable under the Kingpin Act. As an initial matter, the district court offered no reasoned analysis as to whether those prior cases involved foreign persons with substantial connections to the United States to warrant due process protections under the Constitution. Indeed, there is substantial reason to believe

that such cases did not involve persons able to assert due process protections under the Fifth Amendment, as most targets of OFAC sanctions are non-U.S. persons with no connections to the United States. *See, e.g.*, *Fulmen Co. v. Office of Foreign Assets* Control, 547 F. Supp. 3d 13, 21-23 (D.D.C. 2020); *Rakhimov v. Gacki*, 19-cv-2554 (JEB) (D.D.C. April 20, 2020) (where plaintiff "fail[ed] to allege the existence of even a single piece of his property in the United States, or his presence here at any moment in time . . .").

Notwithstanding that fact, even if OFAC may have concurrently designated parties in the past, that does not satisfy the predicate condition for a finding that a person meets the criteria for designation under § 1904(b)(2) or (3) of the Kingpin Act—i.e., that a foreign person is providing material assistance, support, or services, or acting for or on behalf of, *a person subject to sanctions under the Kingpin Act*. The statutory language rendering conduct sanctionable cannot be amended by agency practice, including where no foreign person has yet challenged OFAC on these precise grounds. *See, e.g.*, *Am. Lung Ass'n v. Env. Prot. Agency*, 985 F.3d 914, 954 (D.C. Cir. 2021) (noting that "agency practice

cannot directly show whether Congress had a specific intent on the matter in question . . .").

Third, while the district court found that other "members of this Court have routinely upheld simultaneous designation," the cases relied upon by the district court support no such finding. Indeed, in *Fares v. Smith*, 249 F. Supp. 3d 115 (D.D.C. 2017), the plaintiff had only asserted claims regarding the adequacy of OFAC's post-designation notice, not any substantive challenge to the designation itself. *See id.* at 120 ("The Complaint seeks two forms of relief under the Due Process Clause and the APA stemming from Defendants' alleged failure to supply Plaintiffs with sufficient notice regarding the bases for their designations . . ."). Similarly, in *Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012), the court made no ruling stating that simultaneous designation under Executive Order 13224—a separate authority to that of the Kingpin Act—was permissible, as the plaintiff in that case did not raise the argument. *See id.* at 28-29, 38-39 (Plaintiff's Fifth Amendment claims involved claims that "defendants failed to give him adequate notice of the charges, or a 'thorough statement of reasons' for the decision, adequate time to respond, or an opportunity to cross-examine witnesses or to plead his case

before 'any independent tribunal.'"). Indeed, contrary to the district court's finding otherwise, Appellant is unaware of any case in this Circuit or elsewhere where a court has upheld the kind of concurrent designation at issue here, much less one made under the Kingpin Act. Reliance on court precedent to indicate fair notice to Appellant that his purported conduct involving El Aissami could be held sanctionable under the Kingpin Act is thus unavailing.

Finally, the district court relies heavily on *Gen. Elec. Co. v. Envtl. Prot. Agency*, 53 F.3d 1324, 1327 (D.C. Cir. 1995) to argue that not only was OFAC's interpretation of the Kingpin Act reasonable, but OFAC had provided fair notice to parties of its interpretation. *See* App. 182-83. But that case is inapposite. This is because OFAC would fall short of its obligations under the Due Process Clause to provide fair notice to Appellant as § 1904(b)(2) and (3) would be devoid of content without the prior designation of El Aissami. Moreover, Appellant notes that, in *Gen. Elec. Co.*, this Court held that while the agency's interpretation of its regulation was reasonable under the APA, its levy of a civil penalty on the plaintiff was inconsistent with fair notice under the Due Process Clause. *Gen. Elec. Co.*, 53 F.3d at 1333-1334 (concluding that the agency

"did not provide [General Electric] with fair warning of its interpretation of the regulations."). Accordingly, the district court erred in upholding OFAC's action in light of Appellant's fair notice challenge.

## III. OFAC Failed to Accord Appellant Constitutionally Adequate Notice Regarding the Bases of His Designation in Violation of the Administrative Procedure Act

### A. Due Process Requires That Parties Have Notice Sufficient to Allow Them a Meaningful Opportunity to be Heard

Constitutional due process requires that persons be afforded notice and a hearing before the government can lawfully deprive them of a protected interest. *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). Due process may be a "flexible" rule requiring "such procedural protections as the particular situation demands." *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) (quoting *Mathews*, 424 U.S. at 334-35). However, due process nonetheless requires that persons are given a meaningful opportunity to be heard when their interests are affected by government action. *Mathews*, 424 U.S. at 333.

In administrative cases, this Court has "countenanced" an approach by which due process requires more than the mere disclosure of the unclassified portions of an administrative record. *Fares*, 901 F.3d 315, 319 (D.C. Cir. 2018) (finding the sole disclosure of the unclassified administrative record to be appropriate "in very limited, statutorily recognized circumstances . . ."). Instead, other procedural safeguards are required to ensure the meaningful protection of due process. *Id*. This Court has found that "strictly necessary adaptations of ordinary administrative and judicial process" may be authorized to ensure that a sanctioned person is given adequate notice of the reasons for their designation. *Id*. at 324. This includes, most prominently, requiring the government to provide sanctioned persons "with sufficiently specific 'unclassified summaries . . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations'" that have been withheld for disclosure. *Id*. (quoting *Kiaraldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001); *see also Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (finding that where the classified record is essential to supporting OFAC's determination that a person merits designation, the government may be required to make disclosures that provide the designee with "a

basis from which to understand his designation, and thereby offer rebuttal arguments and evidence.").

Considering the alternative paths available for OFAC to disclose the bases of a designation without undermining the integrity of classified information, this Court has frowned on the partial disclosure of the reasons for a designation. *See Fares*, 901 F.3d at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . ."). Other courts have found likewise. For instance, the Ninth Circuit has held that—in a situation where OFAC disclosed "only one of three reasons for its investigation and designation" to a sanctioned entity—such "incomplete notice [did] not meet the requirements of due process." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012). For the courts, the basic principle remains the same: due process requires that sanctioned persons have an opportunity to present evidence to rebut the allegations relied upon to support a designation or to otherwise negate the determination that the sanctioned persons meet the legal criteria for designation. *Nat'l Council of Resistance of Iran*, 251 F.3d

at 209. Withholding any of the reasons for a designation is thus legally suspect as a matter of constitutional due process.

### B. OFAC Did Not Provide Constitutionally Sufficient Notice of the Reasons for Appellant's Designation

Appellees violated Appellant's constitutional due process rights by failing to provide him with notice sufficient to give him "basis from which to understand his designation[] and . . . offer rebuttal arguments and evidence." App. 81; *Zevallos v. Obama*, 10 F. Supp. 3d at 117. During the course of this matter, Appellees provided the following documents or information to satisfy its due process obligations to provide notice to Appellant: 1) the Federal Register notice announcing Appellant's designation under the Kingpin Act; 2) the press release issued by OFAC announcing Appellant's designation; 3) the unclassified administrative records underlying Appellant's designation; and 4) the unclassified summaries of classified or otherwise privileged information contained in the administrative record.[4]

---

[4] Appellant notes that neither the Federal Register notice nor OFAC's press release were issued to provide notice regarding the reasons for Appellant's designation. Indeed, in the case of the press release, the purpose is not to provide notice to sanctioned persons of the bases for their designations but rather to advertise to the public why the designation action was taken. Such reasons may or may not be aligned

App. 106-07, 108-09, 113-53, 156. The information in these documents constitute the full sum of the material disclosed to Appellant regarding the basis for his designation. Yet, none of these documents or the information contained within them, taken separately or together, provide notice of the reasons for Appellant's designation sufficient to meet OFAC's due process burden, as established by this Circuit's precedent.

As an initial matter, the Federal Register notice did not set forth any information detailing the reasons for OFAC's determination that Appellant met the criteria for designation under the Kingpin Act. App. 106-07. Instead, the Federal Register notice merely identified the Appellant's designation under the Kingpin and the legal criterion under which he was designated. *Id*. On the other hand, OFAC's press release set forth certain factual allegations without specifying whether these allegations, in fact, served as all or part of the factual bases for Appellant's designation under the Kingpin Act. Considering that the press release is intended for public consumption as justification for

---

with the bases for the determination that the person meets the criteria for designation. *See, e.g.*, *Deripaska v. Yellen*, No. 21-cv-5157 (D.C. Cir. March 29, 2022) (stating that "it is OFAC's evidentiary submission and not its press release that provides the basis for the sanctions.").

OFAC's designation action, it is unsurprising that the press release would not provide actual or constructive notice to Appellant as to the reasons for his designation under the Kingpin Act.

OFAC's disclosure of the unclassified administrative record fared no better in providing Appellant with notice as to the reasons for his designation. App. 113-53. OFAC's substantial redactions to the record—which, as explained above, constituted nearly all of the information set forth in that section of the record detailing the basis for the designation—prevented Appellant from understanding the reasons for his designation and from having a meaningful opportunity to challenge those reasons. App. 120-23. As even the district court conceded, " . . . the heavily redacted administrative record alone might not have been sufficient for [Appellant] to understand why the OFAC had designated him . . ." App. 188.

Whether Appellees accorded Appellant sufficient notice to allow him a meaningful opportunity to challenge his designation is thus entirely dependent on OFAC's four unclassified summaries of otherwise privileged information in the administrative record. App. 156. The first of these unclassified summaries recites information that is disclosed in

the unclassified administrative record. App. 156 ("Venezuelan national Samark Jose Lopez Bello is the 'frontman' for Tareck El Aissami."). Clearly, this unclassified summary—taken alone—does not meet the standard set forth in *Fares* that such summaries be "sufficiently specific" as to identify the 'who,' 'what,' 'when,' and 'where' of the allegations underlying a designation. *See Fares*, 901 F.3d at 324. Instead, this unclassified summary merely states a conclusory allegation without evidentiary support, and indeed is less an allegation of conduct, and more a mere characterization of Appellant. Thus, other than issuing a blanket denial of OFAC's summary, Appellant has no meaningful opportunity to rebut the claim. The unclassified summary also does not identify who made the allegation on which OFAC relies; when Appellant is alleged to have served in this function; what Appellant's purported role as a "frontman" for El Aissami entails; or where Appellant is purported to have undertaken this role. The absence of such information inhibits Appellant's ability to offer a meaningful rebuttal to OFAC's allegation.

The third unclassified summary suffers from similar problems. App. 156 ("Lopez Bello is identified as the 'business representative,' 'money manager,' and 'money launderer' for El Aissami."). The summary

57

ostensibly recites merely what other sources have alleged in a conclusory fashion about Appellant without identifying the basis for such allegations. Indeed, the summary does not identify the parties who have made such claims about Appellant, leaving Appellant unable to offer rebuttal evidence that may draw into question the reliability of the speaker of such claims. Much less does the summary allow Appellant an understanding of the basis for such claims, including what serves as the evidentiary basis for the claims. The third unclassified summary is thus clearly not "sufficiently specific" such as to allow Appellant to understand the 'who,' 'what', 'when,' and 'where' of the allegations.

The second and fourth unclassified summaries set forth more information than that contained in the first and third unclassified summaries, but even here the shortcomings of OFAC's disclosures are evident. App. 156. For instance, the fourth unclassified summary states that Appellant "handles financial matters for El Aissami" and "also manages Venezuelan bonds, as a private party, and conducts unspecific deals which generate significant profits." App. 156. (stating that "[t]his activity is done to benefit El Aissami via [Appellant]."). However, the allegation that Appellant "handles financial matters for El Aissami,"

which is separate and apart from the allegation that follows (as evident from the use of the word "also" in the following sentence), lacks the specificity required by this Court in *Fares*. Indeed, while Appellees may contend that the summary identifies 'who' is engaged in the purported conduct, the summary does not establish 'when' or 'where' the conduct is alleged to take place. Nor does the mere claim that Appellant "handles financial matters" provide the specification as to 'what' conduct is alleged to be taking place that would allow for a meaningful rebuttal. If, for instance, Appellees had identified how Appellant "handles [El Aissami's] financial matters," then the summary may have satisfied the *Fares* standard—at least with respect to this specific allegation. But, in the absence of such information, Appellant does not have a meaningful opportunity to offer specific rebuttal arguments or evidence to show why OFAC's allegation is in error.

To the extent that this Court were to determine that certain of the information in the second and fourth unclassified summaries set forth sufficient information in light of the *Fares* standard, this would still not suffice for purposes of constitutional due process. Indeed, the question is not whether Appellees have disclosed enough information to allow

Appellant to meaningfully rebut any of the factual allegations relied upon by OFAC to support its determination that Appellant meets the criteria for designation under the Kingpin Act. Rather, the question is whether Appellees have disclosed enough information to allow Appellant to meaningfully challenge the entire factual bases of the designation. *See Fares*, 901 F.3d at 322 (noting that "disclosure of some but not all of the allegations . . . impairs [a designee's] ability to fully clear their names for delisting . . ."). Partial disclosure of the factual bases for a designation has been frowned upon by this and other courts for the fundamental reason that it denies sanctioned persons the ability to meaningfully challenge their designations—the hallmark standard of constitutional due process. *See Fares*, 901 F.3d at 322; *Al Haramain Islamic Found.*, 686 F.3d at 986 ("[I]ncomplete notice [does] not meet the requirements of due process."). That OFAC may have provided sufficient information to allow Appellant to understand one of the reasons for his designation does not terminate OFAC's burden of disclosing enough information to allow Appellant to understand all of the reasons for his designation.

C.    **The District Court Failed to Appreciate the Scope of OFAC's Notice Obligations as a Matter of Constitutional Due Process**

The district court erroneously concluded that "the evidence disclosed to [Appellant] regarding the circumstances of his designation were sufficient" for purposes of constitutional due process and "did not deprive him of fair notice or a meaningful opportunity to be heard." App. 186. According to the district court, the Federal Register notice, the press release, the unclassified administrative record, and the unclassified summaries "provided [Appellant] sufficient notice for him to comprehend the basis for and meaningfully challenge his designation . . ." App. 188. While noting that "the heavily redacted administrative record alone might not have been sufficient for [Appellant] to understand why the OFAC designated him," OFAC's unclassified summaries "included information that indicated the OFAC's knowledge that [Appellant] acted as a 'business representative, money manager, and money launderer for El Aissami.'" App. 188. The district court appeared to give compelling weight to OFAC's unclassified summaries in determining that the notice provided to Appellant sufficed for purposes of due process. App. 187-88.

However, the district court's rehearsal of the applicable law evidences a failure to appreciate the scope of OFAC's notice obligations under the Due Process Clause. This failure, in turn, gives rise to the district court's erroneous conclusion that the notice provided by OFAC to Appellant sufficed for purposes of constitutional notice.

While the district court relies heavily on OFAC's provision of unclassified summaries to conclude that the notice provided Appellant was sufficient for purposes of due process, the court engaged in no clear reasoning as to why this is so. App. 188 (finding merely that "the unclassified summaries included information that indicated the OFAC's knowledge that [Appellant] acted as a 'business representative, money manager, and money launderer for El Aissami.'"). Indeed, the district court engaged in no sustained analysis as to how the unclassified summaries met the burden set forth by this Court in *Fares*. As reiterated above, the *Fares* court stated that—to the extent unclassified summaries were disclosed to meet OFAC's due process burden—those summaries must be "sufficiently specific" so as to "provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations" relied upon in support of the designation. *Fares*, 901 F.3d at 324. However, the district court

appears to have failed to have set forth any reasoning as to whether or how it determined that the unclassified summaries disclosed by OFAC in this matter were "sufficiently specific" in light of *Fares*. This failure is all the more pronounced considering the district court's finding that "the administrative record alone might not have been sufficient for [Appellant] to understand why the OFAC had designated him . . ." App. 187. Considering the near-total redactions to the unclassified record, there is a need for the district court to have provided its reasoning as to how the unclassified summaries resolved concerns over the lack of notice in light of the test set out by this Court in *Fares*.

Similarly, the district court provided no indication as to whether the unclassified summaries detailed the full sum of allegations relied upon in support of Appellant's designation. App. 187-88. Per the *Fares* court, "disclosure of some but not all the allegations against [a designee] impairs their ability to fully clear their names for delisting," triggering due process concerns. *Fares*, 901 F.3d at 322. Such partial disclosure of the basis for a designation has likewise been viewed askance by other courts as well. *See Al Haramain Islamic Found.*, 686 F.3d at 986 (finding that such "incomplete notice [did] not meet the requirements of due

process."). Yet, the district court's opinion leaves it entirely unclear whether the court reviewed the unclassified summaries with a view to ensuring disclosure of all the reasons for Appellant's designation. For Appellant moving forward, the danger is that he regards the unclassified summaries as constituting the full sum of the reasons for his designation, undertakes an administrative delisting matter to address those reasons, and is denied for reasons that had not been disclosed in the unclassified summaries. This would lead Appellant to suffer the consequences of his designation for a substantial period of time without knowing which reasons for his designation are to be addressed so as to merit his delisting. This eventuality, all too common in matters before OFAC, should invite serious due process scrutiny to ensure that Appellant has a meaningful opportunity to rebut all of the allegations leveled against him. Here, though, the district court failed to evidence that it gave any scrutiny whatsoever to this matter. This failure—at the very least— deserves a remand so that the district court can explain its assessment of the unclassified summaries and how those summaries met OFAC's due process burden as set forth in *Fares*.

For the reasons set forth above, Appellees violated Appellant's Fifth Amendment due process right to notice and a meaningful opportunity to be heard. The district court's failure to accord the notice provided Appellant the scrutiny merited under this Court's precedent constitutes reversible error for which remand is appropriate. In the absence of such remand, Appellant will be left without sufficient notice of the reasons for his designation, including any effective notice as to whether the allegations disclosed thus far constitute the sum of the reasons for his designation under the Kingpin Act.

## CONCLUSION

The district court's order should be reversed and summary judgment should be granted in Appellant's favor.

Respectfully submitted,

s/Erich C. Ferrari
ERICH C. FERRARI
Ferrari & Associates
1455 Pennsylvania Ave. NW
Suite 400
Washington, D.C. 20004
(202) 280-6370
ferrari@falawpc.com

June 12, 2023

65

# CERTIFICATE OF COMPLIANCE

I, Erich C. Ferrari, counsel for Appellant and a member of the Bar of this Court, certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1), that this brief complies with the type-volume limitations provided by Rule 32(a). This brief contains 12,727 words in 14-point font.

s/Erich C. Ferrari
ERICH C. FERRARI

# ADDENDUM

## STATUTORY AND REGULATORY ADDENDUM

## TABLE OF CONTENTS

5 U.S.C. § 706 ...........................................................................A-1

21 U.S.C. § 1901 .......................................................................A-2

21 U.S.C. § 1904 .......................................................................A-3

21 U.S.C. § 1907 .......................................................................A-6

28 U.S.C. § 1291 .......................................................................A-8

28 U.S.C. § 1331 .......................................................................A-8

**5 U.S.C. § 706**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of an agency action. The reviewing court shall—

(1)    compel agency action unlawfully withheld or unreasonably delayed; and

(2)    hold unlawful and set aside agency action, findings, and conclusions found to be—

(A)    arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)    contrary to constitutional right, power, privilege, or immunity;

(C)    in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D)    without observance of procedure required by law;

(E)    unsupported by substantial evidence in a case subject to sections 556 or 557 of this title or otherwise reviewed on the record of agency hearing provided by statute; or

(F)    unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

*          *          *          *          *

**21 U.S.C. § 1901**

(a)    Findings

Congress makes the following findings:

(1)    Presidential Decision Directive 42, issued on October, 21, 1995, ordered agencies of the executive branch of the United States Government to, inter alia, increase the priority and resources devoted to the direct and immediate threat international crime presents to national security, work more closely with other governments to develop a global response to this threat, and use aggressively and creatively all legal means available to combat international crime.

(2)    Executive Order No. 12978 of October 21, 1995, provides for the use of the authorities in the International Emergency Economic Powers Act (IEEPA) (50 U.S.C. § 1701 et seq.) to target and apply sanctions to four international narcotics traffickers and their organizations that operate from Colombia.

(3)    IEEPA was successfully applied to international narcotics traffickers in Colombia and based on that successful case study, Congress believes similar authorities should be applied worldwide.

(4)    There is a national emergency resulting from the activities of international narcotics traffickers and their organizations that threatens the national security, foreign policy, and economy of the United States.

(b)    Policy

It shall be the policy of the United States to apply economic and other financial sanctions to significant foreign narcotics traffickers and their

organizations worldwide to protect the national security, foreign policy, and economy of the United States from the threat described in subsection (a)(4).

\*      \*      \*      \*      \*

## 21 U.S.C. § 1904

(a)    Applicability of sanctions

A significant foreign narcotics trafficker publicly identified in the report required under subsection (b) or (h)(1) of section 1903 of this title and foreign persons designated by the Secretary of the Treasury pursuant to subsection (b) of this section shall be subject to any and all sanctions as authorized by this chapter.  The application of sanctions on any foreign person pursuant to subsection (b) or (h)(1) of section 1903 of this title or subsection (b) of this section shall remain in effect until revoked pursuant to section 1903(h)(2) of this title or subsection (e)(1)(A) of this section or waived pursuant to section 1903(g)(1) of this title.

(b)    Blocking of assets

Except to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to this chapter, and notwithstanding any contract entered into or any license or permit granted prior to the date on which the President submits the report required under subsection (b) or (h)(1) of section 1903 of this title, there are blocked as of such date, and any date thereafter, all such property and interests in property within the United States, or within the possession or control of any United States person, which are owned or controlled by—

(1)     any significant foreign narcotics trafficker publicly identified by the President in the report required under subsection (b) or (h)(1) of section 1903 of this title;

(2)     any foreign person that the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, designates as materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker so identified in the report required under subsection (b) or (h)(1) of section 1903 of this title, or foreign persons designated by the Secretary of the Treasury pursuant to this subsection;

(3)     any foreign person that the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, designates as owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker so identified in the report required under subsection (b) or (h)(1) of section 1903 of this title, or foreign persons designated by the Secretary of the Treasury pursuant to this subsection; and

(4)     any foreign person that the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, designates as playing a significant role in international narcotics trafficking.

(c)     Prohibited transactions.

Except to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to this chapter, and notwithstanding any contract entered into or any license or permit granted prior to the date on which the President submits the report required under subsection (b) or (h)(1) of section 1903 of this title, the following transactions are prohibited:

(1)     Any transaction or dealing by a United States person, or within the United States, in property or interests in property of any significant foreign narcotics trafficker so identified in the report required pursuant to subsection (b) or (h)(1) of section 1903 of this title, and foreign persons designated by the Secretary of the Treasury pursuant to subsection (b) of this section.

(2)     Any transaction or dealing by a United States person, or within the United States, that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate, any of the prohibitions contained in this chapter.

(d)     Law enforcement and intelligence activities not affected

Nothing in this chapter prohibits or otherwise limits the authorized law enforcement or intelligence activities of the United States, or the law enforcement activities of any State or subdivision thereof.

(e)     Implementation

(1)     The Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, is

authorized to take such actions as may be necessary to carry out this chapter, including—

(A)    making those designations authorized by paragraphs (2), (3), and (4) of subsection (b) of this section and revocation thereof;

(B)    promulgating rules and regulations permitted under this chapter; and

(C)    employing all powers conferred on the Secretary of the Treasury under this chapter.

(2)    Each agency of the United States shall take all appropriate measures within its authority to carry out the provisions of this chapter.

(3)    Section 552(a)(3) of title 5 shall not apply to any record or information obtained or created in the implementation of this chapter.

           *           *           *           *           *

## 21 U.S.C. § 1907

As used in this chapter:

(1)    Entity

The term "entity" means a partnership, joint venture, association, corporation, organization, network, group, or subgroup, or any form of business collaboration.

(2)    Foreign person

The term "foreign person" means any citizen or national of a foreign state or any entity not organized under the laws of the United States, but does not include a foreign state.

(3)    Narcotics trafficking

The term "narcotics trafficking" means any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so.

(4)    Narcotic drug; controlled substance; listed chemical

The terms "narcotics drug", "controlled substance", and "listed chemical" have the meanings given those terms in section 802 of this title.

(5)    Person

The term "person" means an individual or entity.

(6)    United States person

The term "United States person" means any United States citizen or national, permanent resident alien, an entity organized under the laws of the United States (including its foreign branches), or any person within the United States.

(7)    Significant foreign narcotics trafficker

The term "significant foreign narcotics trafficker" means any foreign person that plays a significant role in international narcotics trafficking, that the President has determined to be appropriate for sanctions

pursuant to this chapter, and that the President has publicly identified in the report required under subsection (b) or (h)(1) of section 1903 of this title.

         \*         \*         \*         \*         \*

## 28 U.S.C. § 1291

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

         \*         \*         \*         \*         \*

## 28 U.S.C. § 1331

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

         \*         \*         \*         \*         \*